DECISION
{¶ 1} In this original action, relator, MeadWestvaco, seeks a writ of mandamus ordering the Industrial Commission ("commission"), to vacate its order awarding temporary total disability ("TTD") compensation to respondent and issuance of an order denying such compensation.
 {¶ 2} In accordance with Civ.R. 53(C) and Loc.R. 12(M), of the Tenth District Court of Appeals, this matter was referred to a magistrate of this court to conduct appropriate proceedings. The magistrate has rendered a decision, including findings of fact and conclusions of law and has recommended that relator's request for a writ of mandamus be denied. (Attached as Appendix A.) There have been no objections filed.
 {¶ 3} The magistrate has properly concluded that we cannot substitute our judgment of the evidence for that of the commission. In the instant case, the commission, as found by the magistrate, chose to accept the reports of claimant's physicians as well as the testimony of the claimant. This evaluation of the evidence, serves as "some evidence" upon which the commission premised its decision. Therefore, there has been no showing of an abuse of discretion warranting the issuance of a writ.
 {¶ 4} Based upon full review and consideration of the magistrate's findings of fact and conclusions of law, we find no defect in the magistrate's analysis. Therefore, we adopt the magistrate's decision as our own. Accordingly, the requested writ of mandamus is denied.
Writ of mandamus denied.
BOWMAN and KLATT, JJ., concur.
DESHLER, J., retired, of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
 IN MANDAMUS {¶ 5} In this original action, relator, MeadWestvaco, seeks a writ of mandamus compelling respondent Industrial Commission of Ohio ("commission") to vacate its order awarding compensation for temporary total disability ("TTD") to respondent Donald R. Conley and to issue a new order denying the requested compensation.
Findings of Fact:
 {¶ 6} 1. On July 8, 2000, Donald R. Conley ("claimant") was injured while working, and his workers' compensation claim was allowed for lumbosacral strain/sprain and herniated disc at the L5-S1 level. Claimant worked intermittently after that time. He returned to work on July 24, 2000, but worked only for two days. He again returned to work on August 22, 2000, and worked through September 10, 2000. Claimant again returned to work on September 25, 2000, but ceased working in July 2001 due to pain that he described as unbearable.
 {¶ 7} 2. On September 20, 2001, Mark Banks, M.D., claimant's treating physician, recommended that "internal disc derangement" at L4-5 be added to the claim. Regarding treatment, Dr. Banks recommended interdiscal electrothermal therapy ("IDET") followed by physical therapy and light-duty integration.
 {¶ 8} 3. In November 2001, Gerald Steiman, M.D., reported that, while claimant ad a disc displacement at L4-5, it was not causally related to his employment.
 {¶ 9} 4. On November 30, 2001, claimant was photographed while walking in a wooded area wearing a hunting vest and hat, and carrying a gun.
 {¶ 10} 5. On December 6, 2001, the employer wrote to Dr. Banks, inquiring whether claimant could return to a transitional duty assignment, and the employer provided a description of the job it was offering.
 {¶ 11} 6. On December 12, 2001, Dr. Banks responded that, while he was not certain whether claimant could tolerate a return to work, he agreed that claimant could attempt a trial of the proposed assignment while continuing treatment. He noted that the clerical job was close to ideal for the attempting a trial return to work.
 {¶ 12} 7. On December 18, 2001, Dr. Banks completed a work capacity form, outlining the proposed restrictions for the trial return to a transitional duty position.
 {¶ 13} 8. On December 20, 2001, the claim was additionally allowed for internal disc derangement L4-5.
 {¶ 14} 9. On January 2, 2002, the employer wrote to claimant advising him that they had been able to "coordinate your return to work effective Tuesday, January 8, 2002." The letter noted that claimant had an appointment with Dr. Banks on January 7, 2002, at which time claimant should obtain a return-to-work release.
 {¶ 15} 10. On January 7, 2002, Dr. Banks wrote a brief statement that he must "postpone RTW until further treatment performed. Unable to RTW as anticipated (until treated)."
 {¶ 16} 11. On January 14, 2002, a report was prepared on the employer's behalf by Gerald Steiman, M.D., noting that two conditions were allowed, lumbosacral sprain and herniated disc at L5-S1. Dr. Steiman opined, based on his July 2001 and October 2001 examinations and a review of the proposed assignment, that claimant's "history, medical record review, physical examination, and pain status inventory provide sufficient credible evidence to indicate that he is able to perform the job activity of a stores operation light duty job."
 {¶ 17} 12. On January 24, 2002, the employer wrote to claimant to follow up on the January 2, 2002 letter regarding a light-duty job. The letter states that, on January 7, 2002, claimant notified the employer that Dr. Banks would not release him to return to work and that the employer had received the doctor's statement about postponing the return to work. The employer advised that the assignment was still available and that he should contact the employer by January 31, 2002, indicating if he would accept or reject the assignment.
 {¶ 18} 13. On January 29, 2002, Dr. Banks completed a C-84 form certifying TTD from June 16, 2001 to the present and estimating a return to work on April 29, 2002. On the form, he indicated that claimant could not return to his former job nor to "light duty, alternative work, modified work or transitional work."
 {¶ 19} 14. On January 30, 2002, the plant physician, Paul Wesson, D.O., stated his opinion that claimant "was able to perform the restricted duty assignment in stores as of January 8, 2002 and should have returned to work at that time."
 {¶ 20} 15. On February 1, 2002, the employer filed a motion requesting that claimant's TTD be terminated because he had failed to accept a bona fide offer of suitable employment.
 {¶ 21} 16. On March 6, 2002, the employer's motion to terminate TTD was heard by a district hearing officer ("DHO"), who granted it. Claimant appealed.
 {¶ 22} 17. On March 16, 2002, Dr. Banks wrote a letter to clarify his prior opinions. He noted that, on January 7, 2002, claimant had symptoms that were intense and aggravated even by sedentary activity. He stated that claimant must remain off work until corrective treatment could be completed, consisting of IDET followed by gradual physical therapy and use of a lumbar corset. Dr. Banks stated that, if this course of treatment was not successful, surgery was recommended to stabilize the disc.
 {¶ 23} 18. In April 2002, a staff hearing officer ("SHO") heard claimant's appeal, including testimony regarding the episode of deer-hunting by claimant. The SHO vacated the DHO order and awarded TTD compensation through April 28, 2002:
 {¶ 24} "The Staff Hearing Officer finds that although Dr. Banks had previously permitted, by letter dated 12/12/2001, a trial return to sedentary work, that permission was withdrawn and repudiated by the letter dated 03/16/2002 from Dr. Banks.
 {¶ 25} "The claimant is not maximum medically improved because he is scheduled to undergo IDET treatments starting 05/02/2002, and, possibly surgery if the IDET fails.
 {¶ 26} "The 01/14/2002 report of Dr. Steiman is not legally valid evidence as he does not also consider `internal disc derangement L4-5'.
 {¶ 27} "The Staff Hearing Officer finds that the deer hunting episode was only a brief one-time thing which does not show the ability to return to full-time work."
 {¶ 28} 19. The employer's further appeal was refused. It filed a request for reconsideration. The commission set a hearing on the request, but subsequently determined that the employer had not demonstrated grounds for reconsideration._Conclusions of Law:
 {¶ 29} The issue before the court is whether the commission abused its discretion in denying the employer's motion to terminate TTD on the basis of claimant's rejection of a bona fide offer of suitable employment. The commission has sole discretion to evaluate and weigh the evidence, and the court cannot disturb a commission order that is supported by "some evidence" cited in the decision. E.g., State ex rel. Bell v. Indus. Comm. (1995), 72 Ohio St.3d 575, 577.
 {¶ 30} The law is clear that TTD must be terminated when the injured worker refuses to accept a bona fide offer of suitable employment. R.C. 4123.56(A); Ohio Adm. Code 4121-3-32. See, enerally, State ex rel. Jones v. Indus. Comm. (1996), 76 Ohio St.3d 503 (upholding commission's findings regarding suitability of employment).
 {¶ 31} In the present action, the commission had before it evidence that the employer offered employment but that the claimant did not accept the proposed assignment based on the advice of his physician. On January 7, 2002, Dr. Banks refused to approve a return to work the next day, and on January 29, 2002, he again stated that claimant was unable to perform a transitional or alternative assignment. In a March 2002 report, Dr. Banks set forth his views in detail.
 {¶ 32} The employer argues two abuses of discretion: that the commission relied on an opinion from Dr. Banks that was fatally inconsistent with his prior opinions, and the commission failed to accept the opinions of Drs. Steiman and Wesson in determining whether claimant was able to perform the offered work as of January 8, 2002.
 {¶ 33} With respect to Dr. Banks' reports, the employer argues that his written statement on January 7, 2002, as well as his March 2002 letter, cannot constitute some evidence on which the commission may rely because Dr. Banks had previously stated in December 2001 that claimant could try the assignment and that the job was nearly ideal for such an attempt. The employer argues that Dr. Banks' subsequent repudiation of this opinion was not evidence on which the commission could rely because he failed to state an adequate basis for this change of opinion.
 {¶ 34} The magistrate disagrees. Dr. Banks' opinions are not fatally contradictory. First, they were based on claimant's medical presentation at different times. As of December 12, 2001, Dr. Banks evaluated his patient's status and believed that claimant could attempt the assignment. As of January 7, 2002, however, based on claimant's visit that day, Dr. Banks expressly withdrew his approval. In the March 2002 letter, he explained in further detail.
 {¶ 35} The magistrate sees no repudiation of a type that would require the court to bar the 2002 reports of Dr. Banks from evidentiary consideration. See, generally, State ex rel. Eberhardt v. Flxible Corp. (1994), 70 Ohio St.3d 649; State ex rel. Chrysler Corp. v. Indus. Comm. (1998), 81 Ohio St.3d 158. The commission, as the finder of fact, had discretion to determine whether it found Dr. Banks' reassessment in 2002 to be persuasive. See, e.g., State ex rel. Burley v. Coil Packing, Inc. (1987), 31 Ohio St.3d 18 (stating that issues of weight and credibility of evidence lie outside the scope of mandamus inquiry); State ex rel. Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165, 167 (stating that "questions of credibility and the weight to be given evidence are clearly within the commission's discretionary powers of fact-finding"); State ex rel. Pass v. C.S.T. Extraction Co. (1996), 74 Ohio St.3d 373 (stating that "the commission alone is responsible for evaluating evidentiary weight and credibility").
 {¶ 36} In regard to the opinions of Drs. Steiman and Wesson, the commission had no duty to accept them. Dr. Steiman did not consider all the allowed conditions in his report, and the commission properly disregarded it on that basis. State ex rel. Shields v. Indus. Comm. (1996), 74 Ohio St.3d 264. As for Dr. Wesson, the commission has no duty to agree with his assessment. E.g., Bell; Burley, supra.
 {¶ 37} The court must uphold a commission order supported by "some evidence" regardless of whether the record includes other evidence, greater in quantity and/or quality, that supports the contrary decision. Pass, supra. In this case, the commission simply found the testimony of claimant, and the 2002 reports of his physician, to be persuasive, and the court cannot substitute its judgment for the judgment of the commission.
 {¶ 38} In addition, because the magistrate finds no abuse of discretion or error in the commission's decision, the magistrate finds that the commission was within its discretion to deny reconsideration.
 {¶ 39} Accordingly, the magistrate concludes that the employer has not met its burden of proof in mandamus and that the court should deny the requested writ of mandamus.